UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| CHARLOTTE A. THRALL, ) | 3:05-CV-00067-RAM |
| Plaintiff, ) | **FINDINGS OF FACT,** |
| ) | **CONCLUSIONS OF LAW** |
| vs. ) | **AND JUDGMENT** |
| ) | |
| PRUDENTIAL INSURANCE ) | |
| COMPANY OF AMERICA; ) | |
| PRUDENTIAL LIFE INSURANCE ) | |
| COMPANY; KPMG, LLP, A U.S. limited ) | |
| liability partnership; KPMG PENSION ) | |
| PLAN; KPMG PARTNER ) | |
| RETIREMENT SAVINGS PLAN; KPMG ) | |
| MONEY PURCHASE PLAN; and DOES ) | |
| 1-X, inclusive, ) | |
| ) | |
| Defendants. ) | |

This matter was submitted to the court after the parties agreed to stipulate to the relevant factual matters at the pretrial conference. (Doc. #131.) Plaintiff Charlotte A. Thrall was represented by Matthew L. Sharp and Stephen Osborne, Esqs., and Defendant Prudential Insurance Company of America was represented by Ronald K. Alberts and Scott R. Cook, Esqs. After having considered the record and the proofs offered by the parties, and the cause having being submitted for decision, the court makes the following:

**FINDINGS OF FACT**

1. Robert Kotnour ("the insured") was insured under a group employee life insurance policy issued by Defendant.

2. Defendant issued the life insurance policy to KPMG LLP, the insured's former employer. KPMG was the "Group Contract Holder" according to the policy's terms.

A. CHANGING A BENEFICIARY UNDER THE POLICY

3. To change the beneficiary, the policy provided in pertinent part:

> The Employee has the right to choose a Beneficiary.
> ...
> The Employee may change the Beneficiary at any time without the consent of the present Beneficiary. The Beneficiary change form must be filed through the Contract Holder. The change will take effect on the date the form is signed. But it will not apply to any amount paid by Prudential before it receives the form.

Pl. Ex. Doc. #21 (KPMG ID 0375).

4. Defendant first learned about a claim when KPMG submitted a "Group Contract Holder Statement" after being notified by a beneficiary of the death of an insured. In that document, KPMG would identify the designated beneficiaries.

5. KPMG was also responsible for processing and submitting the claim information to Defendant. This information included a claim form, a beneficiary designation form, a beneficiary statement, a benefit election form, and the insured's death certificate.

6. After receiving this information, Defendant evaluated the claim according to its records of the benefit provisions under the policy.

7. Defendant did not independently verify the claims information submitted by KPMG.

8. Defendant would then tender the policy benefits to the designated beneficiaries.

9. Defendant did not keep any records of an individual insured under one of its policies until a claim was submitted by a contract holder.

10. Defendant did not process change of beneficiary requests or receive notices of a change of beneficiary when they were made by an insured. Instead, Defendant relied on KPMG to receive and subsequently submit this information when a claim was due under the policy.

11. KPMG created and administered the procedure for its employees to submit a change of beneficiary request.

12. KPMG decided whether a beneficiary had been changed according to its procedures.

13. KPMG created the change of beneficiary form. It was Defendant's policy to defer to

2

1     KPMG to determine whether the form was satisfactory.

2  14. No policy provision required an insured to provide a notice to Defendant regarding a change in beneficiary.

B. CIRCUMSTANCES SURROUNDING INSURED'S CHANGE OF BENEFICIARY IN THIS CASE

1. The insured initially designated his four children as beneficiaries under the life insurance policy.

2. At a later point, the insured substantially complied with the policy provisions requiring him to provide notice to KPMG of a change of beneficiary (stipulated fact). This notice indicated that the insured was changing the beneficiary to Plaintiff.

3. In a letter dated March 29, 2002, KPMG acknowledged receiving the beneficiary change form.

4. The insured died on October 19, 2002.

5. On November 21, 2002, Defendant tendered the benefits under the policy to the insured's four children according to the beneficiary forms supplied by KPMG (stipulated fact).

6. On that date, Defendant did not have actual notice of the change of beneficiary to Plaintiff (stipulated fact).

C. OTHER FACTS

1. Plaintiff would testify that neither she nor the insured had a copy of the policy (stipulated fact).

2. As of November 4, 2005, the date of Defendant's responses to requests for production of documents, Defendant did not possess a copy of the policy (stipulated fact).

3. Plaintiff brings her claim for unpaid benefits pursuant to § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA").

**CONCLUSIONS OF LAW**

1. This insurance contract at issue in this case is governed by ERISA.

2. The court has jurisdiction over the action.

3. Plaintiff is a beneficiary under ERISA. ERISA defines a beneficiary as "a person designated a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

4. The issue presented is whether KPMG served as Defendant's agent for administering a change of beneficiary, in which case Defendant received notice of the new beneficiary (Plaintiff) before paying the claims submitted on behalf of the previously designated beneficiaries.

5. There is no Ninth Circuit authority that directly answers the question presented.

6. Congress intended ERISA to "protect the interests of participants in employee benefit plans and their beneficiaries." *Everhart v. Allmerica Financial Life Ins. Co.*, 275 F.3d 751, 761 (9th Cir. 2001) (citing 29 U.S.C. § 1001(b) (Congressional findings and declaration of policy)). Specifically, Congress sought to protect plan participants and beneficiaries "as against employers, insurers and administrators of employee benefit plans." *Id.* (quoting *Emard v. Hughes Aircraft Co.*, 153 F.3d 949, 958 (9th Cir. 1998)).

7. The federal courts disfavor creating federal common law absent specific Congressional authorization. *In re Consolidated Freightways Corp.*, 443 F.3d 1160, 1162 (9th Cir. 2006).

8. Congress has given federal courts the responsibility to promulgate federal common law where ERISA preempts state law. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987); *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1499 (9th Cir. 1984) ("Congress realized that the bare terms, however detailed, of these statutory provisions would not be sufficient to establish a comprehensive regulatory scheme. It accordingly empowered the courts to develop ... a body of federal common law governing employee benefit plans.").

9. In *Ward v. Management Analysis Co. Employee Disability Benefit Plan*, the Ninth Circuit cited with approval a decision under California law finding an agency relationship where an employer administers a group insurance policy while under the

4

|   |   |
|---|---|
| 1 | control and direction of the insurer. *Ward v. Mgmt. Analysis Co. Employee Disability Benefit Plan* (Ward I), 135 F.3d 1276, 1284 (9th Cir. 1998) (citing *Elfstrom v. New York Life Ins. Co.*, 67 Cal.2d 503, 432 P.2d 731 (1967)). According to the *Elfstrom* rule, a dispositive factor is proof that the employer participated in the administration of the insurance policy and performed insurance tasks delegated by the insurer. *Id.* at 1283. The court noted that "[o]ther jurisdictions [had] adopted a similar approach to the agency question." *Id.* |
| 10. | On appeal, the Supreme Court reversed and held that ERISA preempted the *Elfstrom* rule recognized by the Ninth Circuit. *UNUM Life Ins. Co. of Am. v. Ward* (Ward II), 526 U.S. 358, 378 (1999). The Supreme Court did not articulate a federal common law agency rule to replace the preempted state law. |
| 11. | As amicus curiae in that case, the United States suggested remand so the Ninth Circuit could "consider whether the *Elfstrom* rule, or something like it, applies to the circumstances of this case as a matter of federal, not California, common law." Brief for United States as Amicus Curiae Supporting Petitioner in Part and Respondent in Part at *28, *Ward II*, 1998 WL 839957, at 18. The Supreme Court did not comment on the merits of the *Elfstrom* rule and instead resolved the case on different grounds. The Ninth Circuit has not again addressed this agency issue. |
| 12. | The Ninth Circuit has suggested it would follow the *Elfstrom* rule. For example, the Oregon Supreme Court held that "as the employer assumes more responsibility for administrative or sales functions customarily performed by an insurer, a question of fact will arise as to the agency relationship between the insurer and the employer." *Paulson v. Western Life Ins. Co.*, 292 Or. 38, 44, 636 P.2d 935, 939 (1981). In *Ward I*, the Ninth Circuit noted that "[this] formulation of the *Elfstrom* rule appears sound. It also comports with our prior determination of the same issue in *John Hancock*." 135 F.3d at 1282 n.6 (citing *John Hancock Mutual Life Ins. Co. v. Dorman*, 108 F.2d 220, 223 (9th Cir. 1939)). |

5

13. In *John Hancock*, a pre-ERISA decision, the Ninth Circuit held that where an employer was delegated significant administrative duties relating to a group insurance policy, including accepting applications, determining eligibility, issuing certificates of insurance, and collecting premiums, the employer was the insurer's agent for purposes of performing these tasks. 108 F.2d at 223. In reaching this conclusion, the court noted that "[n]othing was done in this connection by the insurer save through the [employer]." *Id.*

14. In light of this authority, and after reviewing the parties' papers and carefully considering the arguments presented therein, the court adopts the *Elfstrom* approach to the employer-insurer agency question.

15. None of the traditional factors that would caution against adopting this agency rule as a matter of federal common law under ERISA are applicable here. *See Steinberg v. Mikkelsen*, 901 F.Supp. 1433, 1438 (E.D.Wis. 1995) (identifying these factors as whether the federal common law is consistent with ERISA policy, whether it will impact the actuarial soundness of the plan, and whether the court would effectively be fashioning a new ERISA remedy by adopting the rule).

16. This holding is consistent with ERISA policy because it protects the interests of employees and beneficiaries under benefit plans when significant administrative duties are delegated to the employer and the employee has little knowledge or control over the employer's actions. Such a rule also provides insurers an incentive to monitor and direct the ongoing administration of benefit plans. *See Kobold v. Aetna U.S. Healthcare, Inc.*, 258 F.Supp.2d 1317, 1324 (M.D.Fla. 2003).

17. This rule will not affect the actuarial soundness of the plan. *See Steinberg*, 901 F.Supp. at 1439 (holding that agency rule creating liability against insurer providing group life insurance will not affect its actuarial soundness) (citing *Black v. TIC Inv. Corp.*, 900 F.2d 112, 114-15 (7th Cir. 1990)). Neither does the rule fashion a new ERISA remedy, as it simply allows a beneficiary to receive benefits under a plan from the insurer. *Id.*

at 1339.

18. Equitable principles governing prior cases favor a recovery because in this case, the insured made every effort to change the beneficiary to Plaintiff. *See, e.g., Reid v. Durboraw*, 272 F. 99, 101 (4th Cir. 1921) ("[E]quity, considering that as done which ought to be done, will treat the change [of beneficiary] as actually made when the insured has done all that he could to meet the conditions for change required by the policy"); *Equitable Life Assur. Soc. of U.S. v. Baumgardner*, 55 F.Supp. 985, 991 (W.D.Mo. 1944) (holding change of beneficiary effective according to equity where insured had done all that [was] necessary to comply with the policy, only insured's consent was needed, and "all that remain[ed] to be done were certain formal and ministerial acts on the part of the company").

19. The court concludes that KPMG was Defendant's agent for purposes of changing a beneficiary. *Steinberg*, 901 F.Supp. at 1437 (following Restatement (Second) of Agency as the source of agency principles for federal common law and holding that (1) consent by the principal that agent will act for it, (2) consent to act by the agent, and (3) control by the principal comprise the agency relationship).

20. Mutual consent was demonstrated by the fact that nearly all the administrative responsibilities relating to a change in beneficiary were delegated to KPMG. It also had significant authority over formulating the procedures and forms for changing the beneficiary and decided when such a change has been made. Defendant relied on the information supplied by KPMG and paid the claim to the designated beneficiaries.

21. While delegating several responsibilities to KPMG, Defendant retained control over the policy. For example, it determined whether a submitted claim was eligible for benefits under the policy, provided the final approval of the change of beneficiary form, and made the final payment of benefits.

22. As a result of their agency relationship, Defendant received the change of beneficiary form through KPMG. *Steinberg*, 901 F.Supp. at 1439 (holding that federal common law

7

of agency, imputing knowledge of agent to principal, is applicable to ERISA-regulated employee welfare benefit plans); *Las Vegas Merchant Plumbers Ass'n v. United States*, 210 F.2d 732, 751 (1954) (attributing agent's acts to principal). KPMG acknowledged receiving the beneficiary designation form on March 29, 2002, which was before Defendant paid the claims erroneously submitted on behalf of insured's children. Therefore, Defendant never made a payment to a designated beneficiary according to the terms of the plan.

23. Defendant's reliance on *Boseman v. Connecticut General Life Insurance Co.* is misplaced. 310 U.S. 196 (1937). Defendant cites to the following statement:

> Employers regard group insurance not only as protection at low cost for their employees but also as advantageous to themselves in that it makes for loyalty, lessens turn-over and the like. When procuring the policy, obtaining applications of employees, taking pay roll deduction orders, reporting changes in the insured group, paying premiums, and, generally doing whatever may serve to obtain and keep the insurance in force, employers act not as agents of the insurer, but for their employees or for themselves."

*Id.* at 205. This was in the context of a coverage dispute, where the insured argued that the law of Texas should govern because the employer, acting as the agent of the insured, "solicited and procured him to take insurance under the policy" in that state. *Id.* at 204. This decision provides little guidance to the court for the following reasons.

24. First, *Boseman* was decided as general federal common law. In *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), the Court held that federal courts should instead apply the substantive common law of the forum state. On this basis, the Sixth Circuit has held that "*Boseman* is no longer valid general federal common law." *New England Mut. Life Ins. Co. v. Gray*, 786 F.2d 406, 408 n.3 (1986) (citations omitted). *See also Howell v. Am. Live Stock Ins. Co.*, 483 F.2d 1354, 1359 n.4 (5th Cir. 1973). Rather than constituting binding precedent, *Boseman* is one of various sources that may inform the court of the legal principle that should be applied. *See* 19 C. Allen Wright & A. Miller, Fed. Prac. & Proc. Juris. 2d § 4518 (2008) (pre-*Erie* principles of law possible source for

8

federal common law). In *Ward II*, the Supreme Court did not cite to *Boseman* after holding that ERISA preempted California agency law and that federal common law should apply.

25. Second, this case was decided before Congress enacted ERISA, which reflected a policy interest in protecting the financial interests of employees and their beneficiaries against insurers of group health plans. *See Everhart*, 275 F.3d at 761.

26. Finally, given the issues in this case, *Boseman* is largely inapplicable. The *Boseman* employer performed tasks in connection with procuring an insurance policy and keeping it in force, such as the initial application for the policy and delivery of the certificate to the insured, the release of claims under a previous policy, and the handling of payments. 301 U.S. at 691. KPMG's role in this dispute is unrelated to obtaining or maintaining life insurance coverage. Instead, Defendant provided the insured a certain right with respect to his insurance benefits, namely the ability to change the designated beneficiary, and delegated the administrative responsibilities of processing and retaining the paperwork to exercise that right until the claim became due.

27. This case is also distinguished by the fact that Defendant delegated significant administrative responsibilities to the employer. In *Boseman*, the Supreme Court noted that there was no evidence that the insurer had authorized the employer to act on its behalf. *Id.* at 690. The divergence in these cases is explained by the degree of authority delegated by the insurer. *See Ward I*, 135 F.3d at 1283 n.6 (holding that the seemingly conflicting precedent in the employer-insurer agency context can be reconciled by applying the common principle that an agency relationship arises as the employer assumes administrative functions for the insurer) (*citing Paulson*, 292 Or. at 44).

28. Nevada Revised Statutes § 687B.210 provides the following with respect to the payment of proceeds by an insurer:

> Whenever the proceeds of or payments under a life or health insurance policy or annuity contract issued before, on or after January 1, 1972, become payable in accordance with the terms of

> the policy or contract ... and *the insurer makes payment thereof in accordance therewith* or in accordance with any written assignment thereof ... the payments fully discharge the insurer from all claims under the policy or contract unless, before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that the other person claims to be entitled to the payment or some interest in the policy or contract.

Nev. Rev. St. 687B.210 (2007) (emphasis added).

Assuming this regulation is applicable and not preempted, Defendant cannot rely on the provision to discharge its obligation to Plaintiff. The statutory language requires payment according to the terms of the policy or contract. By its terms, the life insurance policy provided that the beneficiary change was effective immediately with the exception of any payments made before Defendant received the change of beneficiary form. The court has concluded that Defendant received notice of this change through KPMG before it paid the claims submitted on behalf of insured's children. Therefore, Defendant did not comply with the terms of the policy requiring a payment to the designated beneficiary.

## JUDGMENT AND ORDER

1. Judgment is entered in favor of Plaintiff CHARLOTTE A. THRALL, for $750,000 in life insurance benefits.

2. Plaintiff shall be entitled to post-judgment interest in accordance with 28 U.S.C. § 1961(a).

3. Upon proper motion by Plaintiff, the court will consider an award of prejudgment interest and/or attorney's fees.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: December 5, 2008.

_____
UNITED STATES MAGISTRATE JUDGE